**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**HIRAM M. GARZA**                                                                **CIVIL ACTION**

**VERSUS**                                                                          **NO. 04-2002**

**MAY DEPARTMENT STORES, CO., ET AL.**                        **SECTION "K" (4)**


**ORDER**

Before the Court is defendant's Motion for Partial Summary Judgment (Rec. Doc. No.

75).  Upon review of the pleadings, memoranda, and relevant law, the Court finds merit in the

motion with respect to plaintiff's sexual harassment and defamation claims; however there are

questions of fact which preclude the entering of judgment with respect to the gender

discrimination and retaliation claims.  Accordingly, the Court **GRANTS** the motion in part and

**DENIES** the motion in part as follows:

**Background**

Plaintiff Hiram Garza was the general manager of After Hours Formal Wear in Lakeside

Mall, located in Metairie, Louisiana.  Having worked for After Hours since 1999, Garza  was

fired on August 18, 2003.  After Hours avers that although he was an at-will employee, Garza's

termination in August was actually for cause, namely an alleged time fraud committed by Garza against the company.  As a manager Garza held a salaried position, but he was still required to keep track of his time.  After Hours alleges that on July 28, 2003, Garza altered his company time record to show that he worked from 9:00a.m until 3:00p.m. when, in fact an internal investigation revealed he worked less than six hours that day.  Notably, on August 15, 2003,exactly three days prior to plaintiff's termination, Garza had lodged a formal complaint with After Hours's Human Resources department.  Later in the day of August 15, 2003 travel arrangements were made by After Hours Regional Vice-President, Martin Cotten, to come to New Orleans to terminate Garza.  Garza filed the instant suit alleging that his termination for alleged time fraud was pretextual.  Garza alleges he was terminated not because his time card was inaccurate, but rather because he opposed a sexually hostile work environment in which he was targeted for harassment.  Garza alleges Wednesday Wagner, a co-employee of After Hours, harassed him because he was a man.

Garza alleges his harassment by Wagner was severe, pervasive and unwelcome, and it included acts such as coming up behind Garza and bear-hugging him, lifting him off the ground, ruffling his hair, massaging his neck, pinching him, and directly making lewd tongue gestures toward him.  Garza alleges that these acts were directed towards him because of his gender. Garza contends that Cindy Coughlin, district manager and direct supervisor of both Wagner and himself, witnessed these acts and was aware that Garza opposed them, but she did nothing about it and only instructed Garza to "get along" with Wagner.  Garza denies that any part of his work performance was inadequate prior to the alleged harassment by Wagner and it was actually Garza's refusal to tolerate such behavior and his complaints about such behavior that led to his termination.  Garza states that he was fired upon the recommendation of Coughlin who had a close personal relationship with Wagner, and that Marty Cotten in effect just "rubber-stamped" his termination at

2

Coughlin's request.  Upon Garza's termination Wednesday Wagner became general manager of the Lakeside store and took over Garza's old responsibilities.  Garza timely filed a complaint with the EEOC and received his right to sue letter on May 28, 2004.  He filed the instant suit on July 16, 2004.

Originally Garza brought claims under 42 U.S.C. § 2000(e) *et seq.* and 29 U.S.C. § 621 *et seq.* for gender and age discrimination, sexual harassment, retaliation, and an additional claim for owed wages plus interest under La. R.S. 23:631 *et seq.*  Garza has since voluntarily dismissed his claims for age discrimination.  After Hours filed the instant motion for partial summary judgment on Garza's gender discrimination, sexual harassment, retaliation, and defamation claims.

**Legal Standard**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, the burden shifts to the non-movant "to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.   "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment.  Fed. R. Civ. P. 56(e). Rather, the non-movant must come forward with "specific facts" that establish an issue for trial. *Id.*

When deciding a motion for summary judgment, the Court must avoid a "trial on the affidavits." *Anderson*, 477 U.S. at 255. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact. *Id.*  To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed." *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

## Analysis

### Sexual Harassment

"Title VII's prohibition of discrimination 'because of  ... sex' protects men as well as women." *Oncale v. Sundowner Offshore Servs., Inc. et al.*, 523 U.S. 75, 78 (1998).  "Title VII prohibits discriminat[ion] . . . because of sex in the 'terms' or 'conditions' of employment . . .." *Oncale,* 523 U.S. at 80.  "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris*, 510 U.S. 17, 25 (1993)(Ginsberg, J. concurring). *Id.* "When a workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII [42 U.S.C. § 2000(e)] is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

4

Generally a five factor test is employed to determine if a plaintiff could establish a viable sexual harassment claim alleging a hostile work environment. *See D'Erica Flowers v. Camellia Grill*, 2003 WL 21999349, *2 (E.D. La  Aug. 19, 2003).  The plaintiff-employee must show 1) they belong to a protected class; 2) they were subjected to unwelcome sexual harassment; 3) the harassment complained of was based on sex; 4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *See Harvill v. Westward Commc'ns*, 433 F.3d 428, 434 (5th Cir. 2005); *Jones v. Flagship Intl*, 793 F.2d 714, 719-50 (5th Cir. 1986).[1]

Whether the harassment affected a term, condition, or privilege of employment, and thus is actionable, requires the harassment to be "sufficiently severe or pervasive 'to alter the conditions of . . . employment and create an abusive working environment." *Harvill*, 433 F.3d at 434(citing *Meritor Sav. Bank.,FSB v. Vinson*, 477 U.S. 57, 67 (1986) (citations omitted)).  Whether an environment is "hostile" or "abusive" is determined by looking at the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *See Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d

---

[1]It should be noted that per the Supreme Court's holdings in *Burlington Ind. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the Fifth Circuit has recognized that where the alleged harasser is a supervisor with authority over the employee, only the first four elements need be satisfied. *See Watts v. Kroger*, 170 F.3d 505 (5th Cir. 1999)(citing *Williamson v. City of Houston*, 148 F.3d 462, 464 (5th Cir. 1998)).  *Faragher* created vicarious liability on the part of an employer for actions of the supervisor and made available an affirmative defense that (a) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *See Faragher*, 524 U.S. at 775.  Because this case *does* involve a tangible employment action (Garza's termination), the *Faragher* defense does not apply to defendant After Hours. *See Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 655(5th Cir. 2002)("Once a tangible employment action has been found, an employer is not entitled to the *Farragher/Ellerth* defense.).

871, 874 (5th Cir. 1999)(quoting *Harris*, 510 U.S. at 23).  The Fifth Circuit has also considered whether the complained of conduct undermines the plaintiff's workplace competence.  *Hockman v. Westward Commc'ns*, 407 F.3d 317, 326 (5th Cir. 2004)(citing *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270 (5th Cir. 2005)).  To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so.  *Id.*  To that end, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)(citation omitted).  However, even isolated incidents, if egregious can be enough to alter the terms and conditions of employment.  *Id*. at 788.

Whether Wagner's comments and actions rendered Garza's working environment objectively "hostile" or "abusive" must be considered in light of the totality of the circumstances. Having reviewed the deposition testimony and the numerous exhibits presented to the Court, the Court finds Garza has failed to state a colorable claim of sexual harassment because the actions complained of by Garza were neither severe nor pervasive enough to sustain such a claim.

Taking it as true that Garza, by virtue of his EEOC complaint, was a member of a "protected class," and that, as he alleges, he was not only the subject of unwelcome sexual harassment by Wednesday Wagner because he was a male, but also that his employer, After Hours, knew of the harassment and failed to address it, the Court cannot find that the harassment endured by Garza was so severe or pervasive as to affect a term, condition, or privilege of Garza's employment.   Specifically, Garza alleges Wagner's harassing actions were personally directed towards him from June 26, 2003 until July 18, 2003.  While length of time is not determinative, and it is possible that one outrageous incident alone could be severe or pervasive enough to

constitute sexual harassment, no such smoking gun exists here.  During the three-week period

involved (including, according to defendant, Garza's vacation from July 6 through July 14),

Wednesday Wagner allegedly bear hugged and picked up Garza and the only other male, a trainee

named Michael Parker, on several, almost daily, occasions, much to Garza's obvious displeasure.

Wagner apparently engaged in such behavior deliberately in order to "make Hiram mad."  District

manager Cindy Coughlin was allegedly not only aware of the environment, but did nothing to

correct it or discipline Wagner, and even participated by making her own comments about Garza

needing to "get laid."  See Deposition of Hiram Garza, pp. 218-222.  Garza also alleges Wagner

would stick out her tongue and make licking and sucking noises with her tongue in front of other

employees, kissed another female employee in front of other employees, and would run her hands

through Garza's hair, blow kisses, and grab him, and pinch him from behind and on his cheeks.

See Deposition of Hiram Garza, pp. 198-246.  In addition to this behavior, Wagner is also accused

of other seemingly inappropriate behavior and comments, including telling one female employee

with whom Wagner was involved in a romantic relationship with that she (Wagner) "would eat [her

fellow employee's] muffin" when they got home.  See Deposition of Valerie Lonzo at pp. 21-25,

34-35.[2]

The Court agrees Wagner's comments and conduct were boorish and offensive, and not the

product of a mature workplace environment.  However, based on the evidence presented, they were

not severe or pervasive enough to create a hostile work environment.  The comments allegedly

made by Wagner are equivalent to mere utterances of an epithet that engenders offensive feelings.

*See Shepherd*, 168 F.3d at 874(holding comments such as "your elbows are the same color as your

---

[2] It is unclear as to whether Garza himself actually heard Wagner make this statement;
however, it is undisputed that, albeit distasteful, the comment was not directed at Garza.
personally.

nipples," "you have big thighs" specifically directed to plaintiff merely offensive and not

actionable).  Additionally, none of Wagner's actions physically threatened Garza. "Bear hugging"

and flipping over anyone, much less a fellow manager, is indeed amateurish behavior, and perhaps

humiliating in some situations; yet such conduct should not interfere unreasonably with a

reasonable person's work performance or competence.  *See Butler v. Ysleta Indep. Sch. Dist.*, 161

F.3d 263, 269 (5th Cir. 1998)(considering, in addition to the other factors, that "[a] plaintiff . . .

must show that implicit or explicit in the sexual content is the message that the plaintiff is

incompetent because of [their] sex."); see also *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191,

194 (5th Cir. 1996), *cert denied*, 519 U.S. 1055 (1997)(holding that Title VII was "only meant to

bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity

to succeed in the workplace.").

       Wagner's actions, although offensive, are not the type of extreme conduct that would

prevent Garza from succeeding in the workplace; thus the Court finds, based on a consideration of

all the circumstances, that Wagner's conduct did not render Garza's work environment objectively

"hostile" or "severe."   Indeed, Garza's sexual harassment claim involves far less objectionable

circumstances than those for which courts have afforded relief in the past in that Wagner's

comments were neither as frequent nor as serious, nor as personally directed to Garza himself as

other comments that were found to alter the workplace.  *See, e.g., Farpella-Crosby v. Horizon*

*Health Care*, 97 F.3d 803, 806 (5th Cir. 1996)(finding frequent egregious comments about sexual

proclivity created hostile environment; *Long v. Eastfield College*, 88 F.3d 300, 309 (5th Cir.

1996)(holding a single joke involving condoms insufficient.  Additionally, Wagner's bear-hugging

and "flipping" of Garza is not the type of severe conduct that creates a hostile environment.

*Compare, e.g., Hall v. Gus Const. Co.*, 842 F.2d 1010, 1012 (8th Cir. 1988)(holding hostile

8

environment created where male co-workers cornered female co-workers and rubbed their thighs, grabbed their breasts, and held one woman so that a male could grope her).  There is no evidence of an atmosphere of sexual inequality at the Lakeside store, and After Hours has a sexual harassment policy in place that supervisors know about.  *See DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 596 (5th Cir. 1995); see also Deposition of Cindy Coughlin at p. 34-45 and Deposition of Robert White, at p.22.  Garza does not allege that supervisors or co-workers other than Wagner engaged in the harassment, and the comparison of the facts of this case with those of others, based on the totality of the circumstances, supports the Court's finding that Garza has failed to demonstrate a genuine issue of material fact that the harassment affected a "term, condition, or privilege" of his employment.  Consequently, the Court grants summary judgment in favor of After Hours as to this issue.

**Defamation Claim**

Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name.  *Fitzgerald v. Tucker*, 737 So.2d 706, 715 (La. 1999).  "Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."  *Costello v. Hardy*, 864 So.2d 129, 139 (La. 2004)(quoting *Trentecosta v. Beck*, 703 So.2d 555, 559(La. 1997)(citation omitted)).

Words are defamatory which tend to expose a person to contempt, hatred, ridicule, or disgrace, or to injure him in his reputation, occupation, or public standing.  *Fourcade v. City of Gretna*, 598 So.2d 415, 419 (La. App. 5 Cir. 1992)(citations omitted).  The intent and meaning of the alleged defamatory statement must be gathered from the context as well as the words, and all parts of the statement and the circumstances of its publication must be considered to derive the true

meaning. *Id.* The test is the effect on those it is intended to reach. *Id.* Words that impute criminal conduct are considered defamatory *per se* and thus falsity or proof of fault (malice) on the part of the publisher is presumed, and the burden then shifts to the defendant to rebut these presumptions. *See Id.* at 419; *see also Thomas v. Busby*, 670 So.2d 603 (La. App. 3 Cir. 3/6/96)(reversed on other grounds).

Two defenses to an action for defamation are truth and privilege. *Baudoin v. LP & L Co.*, 540 So.2d 1283 (La.App. 5 Cir. 1989), writ denied 542 So.2d 1383 (La. 1989). If the statements are true, the action must be dismissed. *Brannan v. Wyeth Laboratories, Inc.*, 526 So.2d 1101 (La. 1988). However, when a truthful statement carries a defamatory innuendo, it is not a defense unless the innuendo is true. *Schaefer v. Fynch*, 406 So.2d 185 (La. 1981). Privileged communications are absolute or qualified. *Carter v. Catfish Cabin*, 316 So.2d 517 (La. App. 2d Cir. 1975). An absolute privilege exists in limited situations. *Id.* A qualified privilege arises from a social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or owe a duty. *Fourcade*, 598 So.2d at 422. It exists so that free communication will not be inhibited by fear that the communicating party will be held liable in damages, if the communication is later held to be untrue or inaccurate. *Id.* "A qualified privilege exists if the communication is made: 1) in good faith; 2) on any matter in which the person communicating has an interest to be upheld or in reference to which he had a duty; 3) limited in scope to this interest; 4) on a proper occasion; 5) in a proper manner; and 6) to a proper person having a corresponding interest or duty." *Id.*

Finally, "one opposing summary judgment in a defamation action bears a burden of proof more onerous than usual." *Reed v. Johnson*, 1995 WL 562299, *2 (E.D. La. Sept. 21, 1995)(quoting *Dwight W. Andrus Ins., Inc. V. Allaler Corp.*, 482 So.2d 1092, 1093 (La.App. 3d

Cir.), *writ denied*, 486 So.2d 733 (La. 1986)).  Summary judgment is appropriate in a defamation

suit unless the plaintiff produces evidence of sufficient quality and quantity to demonstrate a

likelihood of success at trial.  *Id.*; *see also Tarpley v. Colfax Chronicle*, 650 So.2d 738, 740 (La.

1995).  Without such proof there is no genuine issue of material fact and summary judgment should

be granted.  *Id.*

Garza argues that he was defamed, but fails in his complaint to allege any specific facts

regarding this claim other than the allegation that "the false, fabricated charges asserted against

[Garza] as the basis of his discharge were defamatory, in that defendant knew or should have

known of the falsity of these allegations" and "[a]s a result of his discharge for false or defamatory

reasons, plaintiff has been unable to find employment in the formalwear industry . . ." See Rec.

Doc. No. 1, Complaint at ¶¶ 19-20.   While imputation of criminal conduct, such as time fraud, is

considered defamatory *per se*, *Fourcade v. City of Gretna*, 598 So.2d at 419, Garza fails to meet

the rest of the test for defamation.  All discussions within After Hours' investigation of Garza's

timesheet were privileged and, as such, not subject to suit.  *See Stewart v. Marriot Courtyard*, 2004

WL 2988488, *6 (E.D.La. Dec. 13, 2004); *see also Brown v. Chalmette Medical Center*, 1999 WL

820550, *4 (E.D.La. Oct. 14, 1999)("Louisiana courts have held that an employer who undertakes

an investigation of employee misconduct enjoys a qualified or conditional privilege when she

makes a statement in good faith, concerning a subject in which she has an interest or duty, to

another having a similar interest or duty."(citations omitted)).  Thus, any defamation claim arising

out of After Hours' investigation is not actionable.

Even assuming Garza's complaint to the EEOC, After Hours' response, and the use of the

time fraud accusation in the various pleadings before this Court constitute unprivileged publication

to a third party, Garza has failed on the facts presented to prove the fourth prong of "resulting

injury."  At most Garza has alleged that he was unable to find work in his chosen field of formal

wear sales; yet he offers no evidence that his lack of securing such employment was at all related to

his dismissal from After Hours or that any potential formal wear employer ever even heard any

defamatory statements about Garza from After Hours or others.  Garza's claim that because he

could not find work in formal wear then After Hours necessarily must have defamed him to these

employers is simply too speculative to withstand summary judgment. See, e.g. *Hockman*, 282

F.Supp.2d at 525(holding that plaintiff claiming retaliation by former employer based on fact

employer allegedly provided unfavorable references to prospective employers was nothing more

than mere speculation and not sufficient evidence to sustain summary judgment claim where only

evidence presented by plaintiff was plaintiff's own testimony that because plaintiff did not get

hired**,** former employer 'must have' communicated with other employers).

**Gender Discrimination Claim**

Although the Court finds that the actions complained of were neither severe nor pervasive

enough to constitute sexual harassment or a hostile working environment,  the Court does find that

Garza has alleged sufficient enough facts to survive summary judgment on his claim of gender

discrimination.  A plaintiff may state a *prima facie* case of sex discrimination by showing that (1)

he was a member of a protected class; (2) he was qualified for his position; (3) he was subject to an

adverse employment decision; and (4) that similarly situated employees outside the protected class

were treated more favorably.  *See Giardina v. Lockheed Martin, Corp.*, 2003 WL 21634934, *7

(E.D. La. Jul. 3, 2003)(quoting *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 399 (5th

Cir. 2000)).  The Court finds Garza has established a genuine issue of fact regarding the fourth

prong of the test as there is evidence that female employees who left the store without clocking out

or in were treated with more leniency than Garza such that a reasonable jury could find that the true motive for Garza's discharge was gender related.

In cases involving violation of a workplace rule, Garza must first demonstrate by a preponderance of the evidence that either he did not violate the work rule or that if he did, other female employees who engaged in the activity were not punished similarly. *See Giardina*, 2003 WL 21634934 at *7(citing *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)). Garza creates an issue of fact on this issue by presenting deposition testimony that (1) other After Hours employees were not terminated for leaving the store, whether to go work at another store, or just to get coffee without clocking out, were not terminated, and (2) that Garza did not, in fact, violate the rule because, as testified by Cindy Coughlin in her deposition, an employee leaving the store on store business was not required to clock out.  See Deposition of Cindy Coughlin, p. 134-7.

As stated in his EEOC charge, as well as the complaint filed in this case, Garza alleges that he was subject to disparate treatment with regards to the reason for his termination.  The deposition testimony submitted, including that of district manager Cindy Coughlin, explains that After Hours had no formal policy of requiring managers such as Garza to "clock out" when leaving one company store (in this case After Hours Lakeside) in order to travel to another company store and work there (David's Bridal on Veterans Highway).  See Deposition of Cindy Coughlin, p. 134-7. After Hours argues that Garza was terminated for allegedly going to a doctor's appointment on company time and not clocking out, as well as lying to Wagner (and later Coughlin) about his supposed whereabouts during that time.

The Court finds that substantial issues of material fact exist as to whether Garza was treated and disciplined differently because he was a male.  Garza was the only male working at the

Lakeside Mall store during the events in question,[3] and conflicting deposition testimony has been offered on the point of whether employees who left one store to work at another affiliated store would even have to "clock out," and if so, whether anyone actually did.  See Id.  Additionally, there are conflicts in the depositions submitted as to whether women who worked in the Lakeside Mall store who left the store for any reason, work related or otherwise, without clocking out, were ever similarly disciplined (i.e. terminated) for doing so.  See, e.g.,  Deposition of Valerie Lonzo, p.74.  Finally, the Court has reviewed the time sheets provided by defendant After Hours for the Lakeside Store, and notes that they are, at best, inconclusive as to whether Garza actually was living up to his time obligations.  For instance, on one time sheet dated Saturday July 19, 2003, Garza is shown working a total of 48 hours for the week ending July 19.  See Defendant Exhibit J, Rec. Doc. No. 75.  On another, for the week containing the disputed "time fraud" date of July 28, 2003, depending on which time sheet consulted, Garza is shown to have worked either 45 hours (Exhibit H, Rec. Doc. No. 75. ), 40 hours (p. 1, Exhibit J, Rec. Doc. No. 75.), or 46.5 hours ((p. 2, Exhibit J, Rec. Doc. No. 75).[4]  Given the fact that the precise number of hours each week Garza had to work in order to satisfy his obligations has not been firmly stated, it is unclear that Garza committed time fraud at all.[5]  See Deposition of Cindy Coughlin, p. 79; see also Rec. Doc. No.77,

---

[3]There was an additional male, Michael Parker, at the store during the relevant time period; however Mr. Parker was a trainee, not an employee nor manager of the Lakeside Mall store.

[4]The Court notes, upon inspection, it appears that the totals for other After Hours employees in the Lakeside store were similarly as inconsistent week-to-week.  As such the Court is left with no impression whatsoever as to the exact schedules of After Hours employees, including that of the plaintiff.

[5]This is especially true if Garza was to *occasionally* work only 40 hours per week as, pursuant to the evidence presented to this Court and detailed above, during only one week did Garza work 40 hours.  The majority of his time sheets reveal he worked 45 hours or more each week.

14

Plaintiff's Reply Memorandum, p. 20.  To this end, the Court finds that whether Garza was treated differently by After Hours than other female employees, in both discipline and personnel matters, is a question best left for the jury at trial.

**Retaliation Claim**

To prevail on this claim Garza must establish that (1) the activity engaged by him is protected by Title VII, (2) he was subjected to an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action.  *See Douglas v. DynMcDermott Petroleum Opers. Co.*, 144 "F.3d 364, 372 (5th Cir. 1998), *cert denied*, 119 S.Ct. 798 (1999).  The burden shifting framework enunciated in *McDonnel Douglas v. Green*, 411 U.S. 792, 93 (1973) applies such that if Garza proves a *prima facie* case of retaliation, the burden of production then shifts to After Hours to articulate legitimate, non-retaliatory reasons for its actions. *Id.*  Then the burden shifts back to Garza to prove pretext, namely that the real motive behind the action was retaliation.  *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989 (5th Cir. 1996).  For purposes of this motion it is undisputed that on August 15, 2003, Garza complained to After Hours' human resources department about the alleged harassment.  It is also undisputed that After Hours terminated Garza on August 18, 2003.  What remains at issue is prong three, namely whether there was a causal link between Garza's complaint to human resources and his termination.

Three factors may be helpful to determine whether a causal link has been demonstrated at the *prima facie* stage: (1) the plaintiff's past disciplinary record, (2) whether the employer followed its typical policies and procedures when taking adverse action against the employee, and (3) the temporal relationship between the employee's conduct and the adverse act.  *See Nowlin v. RTC*, 33 F.3d 498, 507-08 (5th Cir. 1994).  "The timing of the adverse employment action can be a significant although not necessarily determinative factor."  *Mayberry v. Vought Aircraft Co.*, 55

f.3d 1086, 1092 (5th Cir. 1995).  Once plaintiff has established a *prima facie* case of retaliation, the burden shifts to defendant to present a non-discriminatory reason for the adverse employment action.  *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1121-22 (5th Cir. 1998).  If the defendant can do so, the burden of production then shifts back to the plaintiff to demonstrate that the proffered reasons is a pretext.  *Id.* at 1122.  At all times, however, plaintiff has the ultimate burden of proof and thus must produce evidence of a conflict that is substantial enough on the issue of retaliation to withstand a motion for summary judgment.  *Id*.  Evidence is substantial enough if it is of "such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions."  *Id*.  "[T]he ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that *plaintiffs'* proffered reason . . . correct.'"  *Reeves v. Sanderson Plumbing Prod.*, 530 U.S.133, 147-48 (2000).  In other words, "[it] is not enough . . . to *disbelieve* the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination."  *Id*.; see also *Hockman v. Westward Commc'ns, L.L.C.*, 282 F.Supp.2d 512, 523 (E.D.Tex. 2003).  Proof that the defendant's explanation is unworthy credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.  *Id*.  "[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination."  *Id*.

Hiram Garza worked for After Hours or its predecessor in the capacity of store manager of the Lakeside Mall store from the date of his hiring on December 27, 1999 until his termination on August 18, 2003.  The evidence presented reveals that, at least until the time of Cindy Coughlin's takeover as district manger and her June, 2003 institution of the training program overseen by

16

Wednesday Wagner, Garza had been an excellent employee and manager, maintaining his position of store manager in the largest and highest volume store in the district, as well as receiving several prestigious company awards, including Manager of the Year. Despite these accomplishments, Garza was fired on August 18, 2003, allegedly for time fraud, and notably, within three days of him having lodged a sexual harassment claim against Wednesday Wagner to company officials. Taking these facts, as well as Garza's proffered explanation of being on company business on July 28, 2003, the date the alleged time fraud in question occurred, in the light most favorable to Garza, it is possible that After Hours, via Cindy Coughlin and others, retaliated against Garza by recommending and effectuating his termination. On these facts the Court cannot find as undisputed that After Hours' firing of Garza was legitimate and non-retaliatory; as such granting summary judgment on Garza's retaliation claim is improper. *See Flowers*, 2003 WL 21999349 at *4.

Accordingly, for reasons stated above,

**IT IS ORDERED** that defendant's Motion to For Summary Judgment (Rec. Doc. No. 75) is hereby **GRANTED** as to plaintiff's sexual harassment and defamation claims and **DENIED** as to plaintiff's claims for gender discrimination and retaliation.

New Orleans, Louisiana, this   21st   day of March, 2006.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**

17